Lita Beth Wright
Ariel Moore
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700

*Attorneys for Plaintiff*
 *David S. Landay*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID S. LANDAY,<br><br>                    Plaintiff,<br><br>        v.<br><br>CEIL KASHA, as successor in interest to Al Kasha, DANA KASHA COHEN, as successor in interest to Lawrence Kasha, and JENNIFER CARTER HIRSCHHORN, as successor in interest to Joel Hirschhorn,<br><br>                    Defendants. | 23 Civ. _____<br><br>**COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

Plaintiff, David S. Landay (original "Bookwriter") ("Landay") by his undersigned attorneys, for his complaint against Defendants, Ceil Kasha (as successor in interest to original "Composer and Lyricist" Al Kasha), Dana Kasha Cohen (as successor in interest to original "Bookwriter" Lawrence Kasha) and Jennifer Carter Hirschhorn (successor in interest to original "Composer and Lyricist" Joel Hirschhorn) ("C Kasha" "D Kasha" and "J Carter," respectively, also collectively referred to as "Defendants"), alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for damages and a declaratory judgment permitting Landay to pursue, and participate in producing, stage productions nationally and internationally of a version

of the stage musical Seven Brides For Seven Brothers ("7B7B") – referred to herein as the MUNY Script. Landay is the sole surviving member, and principal bookwriter, of the four original creators of the stage version of the musical.

2. With the knowledge and consent of each of the Defendants, Landay, who had been the main bookwriter of the original stage version of 7B7B, spent almost six months during 2021 reconceiving and rewriting the book to eliminate a key element of the plot – a kidnap of six young women – without affecting the essence of the show.

3. The kidnap scene had caused the show to become out of date because of the "Me Too" movement which resulted in a precipitous drop in producer and audience interest in the show - and thus rights holders' compensation. As stated in an email from Drew Cohen, President and CEO of Music Theatre International ("MTI"), the company which licenses stock and amateur productions of the show: "Based on what we are seeing in the world today, there is a significant amount of money being left on the table and a lot of potential audience members who are not deriving the pleasure that a live production of this wonderful show that Larry, David, Al, and Joel created can deliver."

4. The MUNY Script received a "go" for production, and unqualified positive reviews from two award-winning theater luminaries (a producer and a director/choreographer), and no criticism from any of the Defendants. In fact, when Landay asked after the opening at the MUNY whether Mike Isaacson ("Isaacson"), Artistic Director and Executive Producer at the esteemed 11,000-seat MUNY in St. Louis, MO and a Tony award winning Broadway producer, was still interested in producing a tour using the MUNY Script with the goal of going to Broadway, Isaacson responded, in sum and substance, yes, if the rights holders agree.

5. The only comment Landay ever received about his work from any Defendant was from D Kasha, the legatee of Lawrence Kasha's ("L Kasha") book writing interest, who told him in a phone call that she liked the new scene that replaced the kidnap.

6. The Defendants have never done anything with respect to any version of a 7B7B script such as writing, producing or helping to obtain a production, or even suggested anything, except to be the financial beneficiaries of worldwide productions.

7. Despite the "reasonableness" provision in the agreement governing the creators' relationship to the work, Defendants have each unreasonably withheld, and continue to withhold, consent to allow the MUNY Script to move forward.

## THE PARTIES

8. Plaintiff Landay is the co-bookwriter of the original stage version of 7B7B (the "Original Script") and sole bookwriter of the MUNY Script. Landay is a resident of New York, New York.

9. Defendant Ceil Kasha is the successor in interest of her deceased husband, Al Kasha ("A Kasha"), co-writer of Music and Lyrics in the Original Script. Ceil Kasha is a resident of Beverly Hills, California.

10. Defendant Dana Kasha Cohen is the successor in interest of her deceased uncle, co-bookwriter L Kasha. Dana Kasha Cohen is a resident of Sherman Oaks, California.

11. Defendant Jennifer Carter Hirschhorn is a successor in interest of her deceased husband, Joel Hirschhorn (J Hirschhorn), co-writer of Music and Lyrics in the Original Script. Jennifer Carter Hirschhorn is a resident of Newtown, Connecticut.

**JURISDICTION AND VENUE**

12. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 based on the diversity of the parties, as Plaintiff is a citizen of New York while Defendants are citizens of California and Connecticut, such that there is complete diversity of citizenship. The matter in dispute exceeds the sum or value of $75,000, exclusive of interest and costs.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b). The agreement Plaintiff seeks to enforce was entered into and originally performed in New York City and a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this District. Additionally, venue is proper because the Dramatist Guild of America, the professional organization which provided the form agreement on which the MBPC is based, is headquartered in New York City.

**FACTUAL ALLEGATIONS**

**Relevant Background**

14. Landay, a member of the Dramatists Guild of America, is a former Broadway producer and member of the organization of producers and theater owners now known as The Broadway League. He is a founder of Broadway Cares, a non-profit that has raised over $325,000,000 to date, and an entertainment lawyer with a Harvard Law and Wall Street background. Landay's most recent theatrical endeavor is author of the play titled Emancipation, about the so-called crazy period of Mary Todd Lincoln, that had a well-received reading put together by award-winning actor David Hyde Pierce with Tony Award winner Victoria Clark reading Ms. Lincoln.

**7B7B After L Kasha's Death**

15. With the knowledge and consent of A Kasha and J Hirschhorn, and of their respective successors in interest, Landay was the sole writer and arbiter of all tweaks made to the Original Script after L Kasha died in 1990.

16. Prior to the opening of the production at the MUNY, Landay reconceived and rewrote an updated 7B7B script that Isaacson was willing to back with the money and facility to produce an Actors Equity production of it at the MUNY. As noted above, Landay had also obtained agreement from Isaacson that he would be interested in producing a tour of the MUNY version with the goal of Broadway.

17. Both the Nederlander organization, one of the largest theater owners in the U.S. and one of the backers of the original stage production, and the Kennedy Center in Washington, D.C. expressed interest in the MUNY Script.

18. Historically, stage performances of 7B7B have been lucrative for all rightsholders and, if the interest the MUNY Script has garnered and the current spate of remakes of popular musicals is considered, it will likely continue to be lucrative for them. The rightsholders' economic interests in 7B7B are directly tied to the play's gross revenues. For the week ending on November 26, 2023 alone, average grosses for a Broadway musical were $1,327,385.

19. To the Plaintiff's knowledge, Defendants have no experience with writing a theatrical work of any kind, much less a musical that tells a story relatable to audiences around the world and seamlessly integrates book, music, dance and song in a manner that is lucrative. In fact, their sole connection to 7B7B has been to receive substantial financial benefit as, to plaintiff's knowledge, sole successors in interest to plaintiff's original co-authors.

20. On December 18, 2019, at the request of Isaacson, Landay, J Carter and her son, Kevin Carter, met in person with Drew Cohen and Isaacson in New York City. C Kasha and D Kasha participated via telephone.

21. At the meeting, each of the Defendants authorized Landay to proceed to write a prologue so that Isaacson could determine (a) if Landay's writing was of the first-class quality that Isaacson wanted, and (b) if Landay would listen to input from Isaacson. If approved solely by Isaacson, each Defendant agreed that Landay was authorized to write a "Me Too" version of the show. Landay let everyone know that although he was involved in starting a new business, he was excited about the project as the beginning of a new life for the show with the goal of a national tour returning to Broadway with the prospect of major money for all.

22. With the ongoing knowledge of each of the Defendants, Landay wrote and rewrote a prologue introducing the leading female character as a grandmother telling a family history to two grandchildren (a small addition to a cast of 30+), a critical scene replacing the kidnap so the play more accurately reflects today's sensibilities following the "Me Too" movement, added more character and stage time for the featured women, and revisited every word of direction and dialogue until Isaacson was satisfied with each detail of the show, including stage directions.

23. As a part of his process, Landay oversaw a reading in Oregon where he could not only hear the then draft, but also get input from a contemporary audience.

24. After ongoing revisions and a third reading, the last one by the principals of MUNY cast, Isaacson, in front of the cast, director/choreographer and his assistant, pronounced the script "Fantastic!" and said to Landay: "You've done it!" He agreed to move forward with

producing the script on the MUNY stage in St. Louis – putting substantial money, his reputation and that of the MUNY on the line.

25. Another theater professional who has opined about the script to date is multiple Tony Award-winning choreographer/director Susan Stroman, who read the script without previously knowing or meeting with Landay. She wrote: "You've created a compelling version of the story that's very appropriate for the world we're living in today." She continued: "You are an enormously talented writer."

26. In the more than two years since they were presented with a draft of the script, other than the positive comment mentioned above, Landay has not received any other comment from any of the Defendants about the MUNY Script, much less critical ones.

27. When Defendants were specifically asked for comment in December 2022 through their then attorney, David Friedlander, Esq., their response was an email dated January 15, 2023 ("2023 email"), signed by each of the Defendants, which purposely provided no comment about the script other than to complain about the prologue. Part of their complaint was to object to the inclusion of live animals, although live animals were never included in *any* version of the prologue.

28. Likewise, in all the time since the above-described meeting at which the need for a "Me Too" version of the script was the bedrock of the discussions, there has been no effort by C Kasha, J Hirschhorn and/or D Kasha to even attempt to exploit the show or to engage another person to rewrite it. Even an email from Drew Cohen to all rights holders resulted in no action by any of the Defendants despite the following statement in the email: "Without an updated version of the Play, the likelihood of MTI being able to reverse the licensing trend and resume the generation of a higher level of royalties for you, as rightsholders, is remote."

**Defendants Unreasonably Withhold Approval of the MUNY Script**

29. The agreement governing the relationship among the parties is the Minimum Basic Production Contract dated June 22, 1981, as amended (the "MBPC"), which was executed by J Hirschhorn, A Kasha, L Kasha and Landay (together referred to in that Agreement as "Author"). The controlling provisions are in Paragraph TENTH BB as follows:

> "All decisions to be made by Author hereunder … shall be determined by the majority agreement of Bookwriter, Composer and Lyricist, (*provided each of said parties shall not unreasonably withhold approval as to any such matters*) with each Author having one vote." (emphasis added)

30. The controlling provision TENTH BB in the MBPC was amended on March 18, 2005 (the "MBPA") and was executed by Landay, J Hirschhorn, A Kasha, and D Cohen as successor in interest to L Kasha (together referred to in that Agreement as "Owner"), and reads as follows:

> "All decisions to be made by Owner regarding the Play, unless otherwise specified, and the disposition of the rights referred to in and to the Play shall be determined by the majority agreement of Bookwriter, Composer and Lyricist, (provided each of said parties shall not unreasonably withhold approval as to any such matters) with each such party having one vote. Each of Bookwriter, Composer and Lyricist shall vote as a unit."

31. As noted above, Defendants not only approved Landay writing the MUNY Script and had a copy of the script well before the production at the MUNY, but they were also aware of all the work that Landay had undertaken.

32. Each of C Kasha, D Kasha and J Carter have unreasonably withheld their approval of the MUNY Script. The 2023 email states: "This email has been composed and approved by all of the concerned parties of your demands" ("demands" which were actually a request for their comments on the MUNY Script). The email goes on to state:

>"*We would never agree to you rewriting the script*, let alone the totally unacceptable prologue." (Emphasis added.)

33. Despite receiving an emailed copy of the MUNY script more than two years ago, not one of the Defendants have ever provided a single criticism about any aspect of the content of the MUNY Script other than in the 2023 email erroneously and solely noting content in the prologue (3 pages out of 128).

34. Last, but not least, none of the Defendants have a business, financial or other interest that would be jeopardized by Plaintiff's efforts to exploit the MUNY Script if the Defendants were held to their "reasonable" obligations.

## FIRST CLAIM FOR RELIEF

**(Breach of Contract – Declaratory Judgment)**

35. Landay realleges and incorporates herein by reference each and every allegation set forth above.

36. Each of the parties hereto, Plaintiff as an original signatory and Defendants as the successors in interest to the other three original signatories, were party to MBPC, as amended. Pursuant to that Agreement, the Defendants cannot "unreasonably withhold" approval of the MUNY Script or Plaintiff's efforts to exploit it for the financial benefit of all parties.

37. Plaintiff has performed his obligations under the MBPC, as amended.

38. To the extent Defendants have the right to vote to approve changes to the Original Script under the MBPC, as amended, they have unreasonably withheld their approval.

39. Based on the allegations set forth above, there is a real and justiciable controversy about whether Defendants have unreasonably withheld approval of the MUNY Script and Plaintiff's efforts to exploit it under the MBPC, as amended.

40. Accordingly, Plaintiff is entitled to a declaratory judgment in accordance with the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., that Defendants have unreasonably withheld approval of the MUNY Script and Plaintiff's efforts to exploit it.

41. Additionally, Defendants' unreasonable refusal to consent to Plaintiff's efforts to exploit the MUNY Script have interfered with and prevented Plaintiff's efforts to reverse the negative licensing trend in recent years and generate higher royalties for all rightsholders due to certain outdated and offensive aspects of the original script, including the kidnap scene.

42. Accordingly, as a result of Defendants' breaches of contract, Plaintiff seeks damages in an amount to be determined at trial, but no less than $250,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. Plaintiff requests judgment declaring that Defendants have unreasonably withheld approval of the MUNY Script and Plaintiff is entitled, under the MBPC, as amended, to pursue, and participate in producing, productions nationally and internationally of 7B7B using the MUNY Script, including first-class stage productions and film.

2. Judgment awarding Plaintiff an amount to be determined at trial, but no less than $250,000, for lost royalties caused by the unreasonable withholding of consent and subsequent inability to exploit the production; and

3. For reimbursement for all costs associated with this lawsuit including, but not limited to, the legal fees and costs incurred in connection herewith.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury of all issues so triable pursuant to Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: New York, New York
December 12, 2023

                                       **AMINI LLC**

                                       */s/ Lita Beth Wright*_____
Lita Beth Wright
Ariel Moore
131 West 35th Street
12th Floor
New York, New York 10001
(212) 490-4700
lbwright@aminillc.com
amoore@aminillc.com

*Attorneys for Plaintiff*
 *David S. Landay*